# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAQUIN OSCAR VASQUEZ-GUERRERO,<br><br>           Plaintiff,<br><br>     vs.<br><br>DON KING, et al.,<br><br>           Defendants.<br>_____/ | CASE NO. CV-F-05-0474 LJO<br><br>**DECISION ON COMPLAINT FOR DECLARATORY JUDGMENT OF NATURALIZATION**<br>(Docs. 20 and 21.) |

## **INTRODUCTION**[1]

Plaintiff Joaquin Oscar Vasquez-Guerrero ("Mr. Vasquez-Guerrero") seeks this Court's review of a United States Bureau of Citizenship and Immigration Services ("CIS")[2] denial of his naturalization application based on his criminal record. At the parties' request, this Court reviewed Mr. Vasquez-Guerrero's request for judgment to approve his naturalization application on the record and the parties' briefing. For the reasons discussed below, this Court DENIES Mr. Vasquez-Guerrero's request for judgment to approve his naturalization application and to declare CIS denial of his application void and of no force.

---

[1] Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by an August 8, 2005 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings.

[2] Mr. Vasquez-Guerrero's complaint names a former CIS officer as defendant. For convenience, this Court will simply refer to CIS in place of the named defendant.

## BACKGROUND

### Mr. Vasquez-Guerrero's Record

Mr. Vasquez-Guerrero, age 49, is an El Salvadoran citizen and has lived in the United States since age 4. Mr. Vasquez-Guerrero is a permanent United States resident and served in the United States Air Force during the armed conflict of the Vietnam War. He was honorably discharged in 1979.

In 1975, Mr. Vasquez-Guerrero accepted non-judicial punishment for violation of a Uniform Code of Military Justice dereliction of duty article and was found to have willfully failed to perform his laboratory technician duties. Mr. Vasquez-Guerrero was reduced in rank from Airman First Class to Airman, was suspended, and forfeited $100 of his pay.

During immigration proceedings, Mr. Vasquez-Guerrero testified under oath that in 1978, he received a three-year probationary sentence in Kern County for selling alcohol without a license.

In 1988 in Kern County Superior Court, Mr. Vasquez-Guerrero was found guilty of violating California Penal Code section 243.4(a) (sexual battery) and section 647(a) (disorderly conduct). Mr. Vasquez-Guerrero was sentenced to 90 days confinement and three years' formal probation and was required to register as a sex offender.

In 1998 in San Diego County Superior Court, Mr. Vasquez-Guerrero entered a guilty plea to violation of California Health and Safety Code section 11359 (possession of marijuana for sale) and California Penal Code section 290(G)(1) (failure to register as sex offender). Mr. Vasquez-Guerrero was sentenced to 180 days confinement, three years probation and restitution.

On November 6, 2003, Mr. Vasquez-Guerrero's 1998 conviction for possession of marijuana for sale was vacated on constitutional grounds. Mr. Vasquez-Guerrero changed his guilty plea to violation of California Health and Safety Code section 11360(a) (transport, import, sell, furnish, etc. marijuana) and admitted to having "offered to transport a controlled substance, to wit, marijuana." Mr. Vasquez-Guerrero was sentenced to three years' probation, and the guilty plea and sentence were nunc pro tunc to the July 1998 conviction. During an under oath naturalization interview and related proceedings, Mr. Vasquez-Guerrero testified that his conviction arose from his attempt to drive 60 pounds of marijuana in a modified vehicle from Mexico into the United States.

///

**Administrative Proceedings**

On October 7, 1998, Mr. Vasquez-Guerrero was placed in removal proceedings based on his 1998 conviction. The removal proceedings were suspended after Mr. Vasquez-Guerrero filed, on December 8, 2003, his naturalization application under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, et seq.,[3] and more specifically under section 1440 (naturalization through active-duty service in armed forces during Vietnam hostilities). Under 8 C.F.R. § 329.2(d), an applicant seeking approval under serviceman status must demonstrate, among other things, that he/she "[h]as been, for at least one year prior to filing the application for naturalization, and continues to be, of good moral character . . ."

On August 31, 2004, CIS denied Mr. Vasquez-Guerrero's naturalization application and found that he failed to establish requisite good moral character based on his 1975 military discipline and 1988 sexual battery and 1998 marijuana transport, import, sell, furnish, etc. convictions. CIS concluded it was not limited to review the year proceeding Mr. Vasquez-Guerrero's application and cited a "pattern and long history of discontinuity" of moral character to deny his application.

Mr. Vasquez-Guerrero requested an administrative hearing on denial of his naturalization application and contended that CIS improperly denied his application in the absence of criminal convictions in the year prior to his application and that he was not given adequate opportunity to prove his good moral character during the year period. With his request, Mr. Vasquez-Guerrero filed a brief and supporting letters from his employer's human resource manager, six coworkers, 11 family members and in-laws, and four friends.

After a January 26, 2005 hearing, CIS issued its February 28, 2005 decision to determine that Mr. Vasquez-Guerrero's evidence did not warrant reversal of denial of his naturalization application. In its decision, CIS concluded: "The gravity of the arrests and subsequent convictions, as well as the disciplinary action received while in the United States Air Force, render you an unfavorable candidate for naturalization at this time."

On April 11, 2005, Mr. Vasquez-Guerrero filed this action to request judgment to approve his

---

[3] All statutory references, unless otherwise noted, will be to the INA, Title 8, United States Code.

naturalization application and to declare denial of his application void and of no force. On May 12, 2005, CIS filed its motion to stay this action, pending removal proceedings on grounds that they preclude naturalization. With his July 8, 2005 order, the district judge denied CIS' motion to stay this action on grounds that this Court has jurisdiction to review denial of Mr. Vasquez-Guerrero's naturalization application despite removal proceedings. Based on the parties' stipulation, this Court issued its August 2, 2005 order to determine this action based on the parties' briefing and without a hearing.

## DISCUSSION

CIS contends that Mr. Vasquez-Guerrero has failed to meet his burden to demonstrate he possesses requisite good moral character for naturalization. Mr. Vasquez-Guerrero contends that CIS erred in considering convictions no less than 5½ years prior to his naturalization application and ignoring his evidence of good moral character.

### Judicial Review And Burden Of Proof

"The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." 8 U.S.C. § 1421(a). There is no natural or inherent right to become a United States citizen. *Puciaty v. U.S. Dep't of Justice, Immigration and Naturalization Service*, 125 F.Supp.2d 1035, 1038 (D. Hi. 2000). "Citizenship is a gift or a privilege which the government may refuse or may grant on such conditions as it may prescribe." *Puciaty*, 125 F.Supp.2d at 1038.

Section 1421(c) addresses this Court's review of denial of Mr. Vasquez-Guerrero's naturalization application: "Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law . . ." In *Berenyi v. Immigration and Naturalization Service*, 385 U.S.630, 636-637, 97 S.Ct. 666 (1966), the United States Supreme Court addressed an alien's burden to seek citizenship:

> But when an alien seeks to obtain the privileges and benefits of citizenship, the shoe is on the other foot [as compared to stripping citizenship or deportation]. He is the moving party, affirmatively asking the Government to endow him with all the advantages of citizenship. Because that status, once granted, cannot lightly be taken away, the Government has a strong interest in ensuring that only qualified persons are granted citizenship. For these reasons, it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect. This Court has often stated that doubts "should be resolved in favor of the United States and against the claimant." (Citation omitted.)

"The applicant shall bear the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization . . ." 8 C.F.R. § 316.2(b).

Mr. Vasquez-Guerrero bears the burden to demonstrate he is entitled to naturalization.

## **Good Moral Character**

Section 1440 permits naturalization of aliens who "served honorably" in the United States armed services during designated wars and hostilities. As noted by the parties, the only dispute is whether Mr. Vasquez-Guerrero meets the good moral character requirement for naturalization by a serviceman applicant. Section 1427(a) provides: "No person . . . shall be naturalized unless such applicant . . . during all [regulatory] periods . . . has been and still is a person of good moral character . . ." 8 C.F.R. § 316.10(a) addresses the good moral character requirement: "An applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character." 8 C.F.R. § 316.2 provides that "to be eligible for naturalization, an alien must establish that he or she . . . [f]or all relevant time periods . . . has been and continues to be a person of good moral character."

One year prior to filing a naturalization application is the regulatory period to address good moral character for a serviceman naturalization applicant who served during the Vietnam War. 8 C.F.R. § 329.2(d) ("Has been, for at least one year prior to filing the application for naturalization, and continues to be, of good moral character . . ."). "[S]ervicemen and servicewomen are not exempt from section 1427's good moral character requirements." *Santamaria-Ames v. INS*, 104 F.3d 1127, 1130 (9th Cir. 1996).

The INA does not define "good moral character" but sets forth a list of characteristics that, if present in a naturalization applicant, preclude a finding of good moral character. 8 U.S.C. § 1101(f); *United States v. Hovsepian*, 359 F.3d 1144, 1166 (9th Cir. 2004). Section 1101(f) provides: "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character."

The naturalization regulations provide a lengthier list than section 1101(f) of conduct lacking good moral character. *See* 8 C.F.R. § 316.10 (overlaps with offenses listed in section 1101(f)). Nonetheless, "[n]either the list of conduct in § 1101(f) or that in the regulations is exhaustive." *Puciaty*, 125 F.Supp.2d at 1039. Conduct not falling under a category in section 1101(f) may be considered to determine whether good moral character is lacking. *See Puciaty*, 125 F.Supp.2d at 1039. If complained

of conduct does not fall within enumerated categories, a Court must continue its analysis by looking into "standards of average citizens." *Puciaty*, 125 F.Supp.2d at 1039.

In addition, section 1427(e) does not limit consideration to the regulatory period (one year for servicemen naturalization applicants) prior to application filing:

> In determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship . . ., the Attorney General shall not be limited to the applicant's conduct during the [regulatory period] preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period.

The naturalization regulations further provide that CIS "shall evaluate claims of good moral character on a case-by-case basis" and consider "the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2). CIS is not limited to reviewing the applicant's conduct during the regulatory period "immediately preceding the filing of the application, but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period, if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character." 8 C.F.R. § 316.10(a)(2).

CIS and district courts "may consider conduct prior to the one-year regulatory period in determining whether an otherwise qualifying veteran has established the requisite good moral character to merit naturalization." *Santamaria-Ames*, 104 F.3d at 1130. "Conduct occurring outside the regulatory period is relevant only insofar as it bears on [applicant's] *present* moral character." *United States v. Hovsepian*, 2005 WL 2127299 (9th Cir. 2005). In *Santamaria-Ames*, 104 F.3d at 1132, the Ninth Circuit explained:

> . . . under 8 U.S.C. § 1440 [serviceman naturalization applicant] and 8 C.F.R. § 329.2(d) the pertinent inquiry is whether the petitioner is presently of good moral character and has demonstrated good moral character from the year preceding the filing of his application to the present. Criminal conduct and other behavior prior to the one-year period may be examined. Whether the petitioner can establish that he has reformed and rehabilitated from his prior conduct is germane to the determination of whether he has established good moral character from the beginning of the one-year period to present. . . . If the petitioner demonstrates "exemplary conduct with every evidence of reformation and subsequent good moral character" from the beginning of the one-year regulatory period to the present, then his application cannot be denied based solely on his prior criminal record, although it is **highly relevant** to the ultimate determination. . . . This rule is consistent with the legislative history of 8 U.S.C. § 1440, which indicates that relief from some of the burdensome naturalization requirements has been provided as a

reward to aliens who served honorably in wartime hostilities. . . . (Citations omitted; bold added.)

Just recently, the Ninth Circuit further explained:

> As we cautioned in *Santamaria-Ames v. INS*, 104 F.3d 1127, 1132 (9th Cir. 1996), if the applicant demonstrates exemplary conduct during the specified statutory period, "then his application cannot be denied based solely on his prior criminal record." To hold otherwise would sanction a denial of citizenship where the applicant's misconduct . . . was many years in the past, and where a former bad record has been followed by many years of exemplary conduct with every evidence of reformation and subsequent good moral conduct. Such a conclusion would require a holding that Congress had enacted a legislative doctrine of predestination and eternal damnation . . . whereas the statutes contemplate rehabilitation.

*Hovsepain*, 2005 WL 2127299 (citations omitted).

With these principles in mind, attention turns to whether Mr. Vasquez-Guerrero has demonstrated exemplary conduct, reform and good moral character since a year prior to his naturalization application filing and in light of his criminal record.

### **Mr. Vasquez-Guerrero's Reform**

Since Mr. Vasquez-Guerrero filed his naturalization application on December 8, 2003, the initial focus is on his conduct and character since December 8, 2002. CIS acknowledges that none of Mr. Vasquez-Guerrero's incidents or convictions occurred within the one-year period prior to his naturalization application filing. CIS contends that Mr. Vasquez-Guerrero's "lengthy and varied criminal history is nevertheless 'highly relevant' to the agency's disposition of his naturalization application" in that it spans more than 20 years and includes violent (sexual battery) crime and a most recent conviction involving a large amount of marijuana. CIS concludes that the issue boils down to whether Mr. Vasquez-Guerrero "met his burden of proving that his conduct during the regulatory period demonstrates adequate reformation." CIS argues that Mr. Vasquez-Guerrero failed to meet his burden to prove reformation based on letters from his employer's human resources manager, work colleagues, friends and family members that he is a reliable employee, devoted family man, and honest about his past. CIS contends that the letters are limited to "generalized statements of support and affection" and lack details about Mr. Vasquez-Guerrero's life during his criminal conduct and an explanation for deviation from otherwise good character.

In response, Mr. Vasquez-Guerrero points out that his most recent 1998 conviction was 5½ years

prior to his December 8, 2003 naturalization application. Mr. Vasquez-Guerrero argues that denial of naturalization would vitiate naturalization laws which were intended to reward former servicemen like Mr. Vasquez-Guerrero despite past criminal conduct. Mr. Vasquez-Guerrero points to the 22 letters on his behalf and characterizes them as "copious documentation of good character" and praise for his "devotion" to family, work, "willingness to sacrifice for others, his remorse of past conduct, and his rehabilitation." Mr. Vasquez-Guerrero argues that CIS must "weigh the overwhelming evidence of rehabilitation and reformation in the past four years that indicate unambiguously that Mr. Vasquez-Guerrero is a person of good character in the year before he applied to naturalize and not make its conclusion solely on this remote in time conduct."

This Court has reviewed the 22 letters, dated September and October 2004, for Mr. Vasquez-Guerrero. According to his employer's human resources manager, Mr. Vasquez-Guerrero has worked for his employer since March 2000, "has demonstrated very good performance," and has functioned without violating company policy or disciplinary action. In their letters, Mr. Vasquez-Guerrero's six coworkers commended his conscientious work ethic, high moral values, commitment to friends and colleagues, leadership ability, organization and communication skills, competence, willingness to help, maximum effort and support.

In her letter, Mr. Vasquez-Guerrero's wife noted Mr. Vasquez-Guerrero's support of her and their family. In addressing Mr. Vasquez-Guerrero's reform, his wife noted:

> I am not unrealistic of my husband's mistakes and have made some real bad choices in his life. These choices have hurt our family dearly. Our family as a whole has been able to pick up the pieces and continue to care for our children in a safe and loving environment.

In his letter, Mr. Vasquez-Guerrero's son praised Mr. Vasquez-Guerrero's support and acknowledged his "mistakes in the past" without detail on Mr. Vasquez-Guerrero's reform.

In her letter, Mr. Vasquez-Guerrero's mother noted that Mr. Vasquez-Guerrero acted as a father figure for his three younger brothers in their father's absence and that although Mr. Vasquez-Guerrero made mistakes, "he is a good person loving son." In their letters, Mr. Vasquez-Guerrero's two younger brothers acknowledged Mr. Vasquez-Guerrero's "mistakes" but were unable to explain "what he was thinking." The brothers noted Mr. Vasquez-Guerrero's candor of and apology for his mistakes, maturity

since he made them, and devotion to his family.

In their letters, Mr. Vasquez-Guerrero's uncle, cousin, brother-in-law and sister-in-law noted that Mr. Vasquez-Guerrero has turned around his life, learned from his mistakes, repented and is devoted to his family and is a great provider. In their letters, Mr. Vasquez-Guerrero's several friends noted that Mr. Vasquez-Guerrero has repented for his mistakes and turned his life around, understands the seriousness of his crimes, is dedicated to and responsible for his family, is dependable, loyal, trustworthy, generous, kind and hardworking, and attends church each Sunday.

This Court is entrusted to determine whether Mr. Vasquez-Guerrero has met his burden to demonstrate his good moral character since December 8, 2002, a year prior to filing his naturalization application. To satisfy his burden, Mr. Vasquez-Guerrero must demonstrate he has reformed and rehabilitated from his past criminal conduct and has engaged in exemplary conduct. The chief evidence before this Court is 22 letters of Mr. Vasquez-Guerrero's relatives, coworkers and friends. The letters indicate that Mr. Vasquez generally acknowledges his past crimes and has repented for them. The letters vouch for Mr. Vasquez-Guerrero's recent good work record and family devotion. Nonetheless, Mr. Vasquez-Guerrero offers nothing in his own words to explain his past conduct or to demonstrate he is reformed and rehabilitated. Mr. Vasquez-Guerrero relies on the passage of time between his most recent 1998 conviction and his naturalization application.

Mr. Vasquez-Guerrero's evidence is insufficient to demonstrate his reform and rehabilitation, especially given the lofty status of citizenship and resolution of doubts against a claimant. *See Berenyi*, 385 U.S. at 636-637, 97 S.Ct. 666. The evidence reveals that during each of the past three decades, Mr. Vasquez-Guerrero has been convicted of crimes, including one which required him to register as a sex offender. The letters to support Mr. Vasquez-Guerrero fail to address meaningfully his reform and rehabilitation and merely allude to his maturation. Since the letters are from relatives, friends and coworkers, an issue arises as to the writers' partiality. Mr. Vasquez-Guerrero offers nothing from a probation officer or similar authority to attest to his reform and rehabilitation. The letters suggest that Mr. Vasquez-Guerrero leads the life of an average citizen but fail to demonstrate exemplary conduct with every evidence of reform. In sum, although Mr. Vasquez-Guerrero has not been convicted of a crime since 1998, questions remain as to his reform and rehabilitation to preclude a clear view of his

present moral character and an award of citizenship.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DENIES Mr. Vasquez-Guerrero's request for judgment to approve his naturalization application and to declare CIS denial of his application void and of no force; and

2. DIRECTS this Court's clerk to enter judgment in favor of defendant Don King and against plaintiff Joaquin Vasquez-Guerrero and to close this action.

IT IS SO ORDERED.

**Dated:   September 30, 2005**          /s/ Lawrence J. O'Neill
66h44d                                                    UNITED STATES MAGISTRATE JUDGE